COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-203-CR

 

 

KELLY JO MCKEE                                                                APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE 415TH DISTRICT COURT OF PARKER COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Kelly Jo McKee appeals from her conviction and
twenty-year sentence for intoxication manslaughter.  In three points, appellant contends that the
trial court erred by making an affirmative deadly weapon finding and by
overruling appellant=s objection to the expert testimony of
Roger Smith, a trooper with the Texas Department of Public Safety.  We affirm.

 








Background Facts

On October 29,
2004, appellant was driving her SUV northbound on a rural stretch of F.M. 1189
when she failed to negotiate a turn, left the road, overcorrected, re-entered
the road, and then swerved into the oncoming lane of traffic.  When appellant attempted to steer her SUV
back into the correct lane, the SUV rolled over and became airborne.  Appellant=s SUV struck a car
driven by Ronald Price, in which Price=s wife, Alice
Cushman, was a passenger.  Cushman
survived, but Price was killed. 
Appellant later admitted that the wreck was her fault and that she had
been speeding when she tried to negotiate the turn, and police officers
determined that appellant was intoxicated during the accident.

The State indicted
appellant for intoxication manslaughter, and appellant pled guilty on March 6,
2006.  On the same day, the trial court
assessed appellant=s punishment at twenty years= confinement with
a finding that appellant used or exhibited a deadly weapon during the
commission of the offense.

Appellant=s Objection to
Trooper Smith=s Expert Testimony








Because the
outcome of appellant=s third point affects her first two, we
address it first.  In her third point,
appellant contends that the trial court erred by overruling her objection to
the introduction of Trooper Smith=s expert testimony
as to the cause of Price=s death. 
We review a trial court=s ruling admitting or excluding evidence for an abuse of
discretion.  Prystash v. State, 3
S.W.3d 522, 527 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1102
(2000); Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)
(op. on reh=g).  Absent a
clear abuse of discretion, a trial court=s decision to admit or exclude expert testimony will not be disturbed. Wyatt
v. State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000).  

The admissibility of expert testimony is
governed by rule 702 of the Texas Rules of Evidence.[2]  Pursuant to Kelly v. State, the
proponent of expert testimony or evidence based on a
scientific theory must show by clear and convincing evidence that the evidence
is (1) reliable and (2) relevant to assist the trier of fact in its
fact-finding duty. 824 S.W.2d 568, 572 (Tex. Crim. App. 1992); Ochoa v.
State, 994 S.W.2d 283, 284 (Tex. App.CEl Paso 1999, no pet.).

Near the conclusion of the State=s direct examination of Trooper Smith, the following exchange
occurred:








[STATE]:  So in the manner of its use, did the
defendant=s
vehicle cause the death of the victim?

 

[DEFENSE
COUNSEL]:  I=m
going to object to that, Your Honor.

 

THE
COURT:  I=m
sorry?

 

[DEFENSE
COUNSEL]:  I=m
going to object to that.

 

THE
COURT:  I guess I didn=t
hear you.  You object to it?

 

[DEFENSE
COUNSEL]:  I object.

 

THE
COURT:  Based on what?

 

[DEFENSE
COUNSEL]:  I object to his coming in and
testifying as to its manner of use.  So
far he=s not
laid a predicate for its manner of use in terms of a deadly weapon finding.

 

. . .
.

 

THE
COURT:  I=ll
take that under advisement.  We=re
out ofBthis
thing is not working.

 

[DEFENSE
COUNSEL]:  Your Honor, I also have a
second objection to that particularCand that would be that it=s
asking the witness to come to a legal conclusion.

 

THE
COURT:  How is the fact of whether death
occurred a matter of law?

 

[DEFENSE
COUNSEL]:  It=s not
a matter of that, Your Honor, it=s a matter of whether or not
asking himCthe
way the question was posed was inCin the manner of it=s
use.

 

THE
COURT:  Yeah.

 








[DEFENSE
COUNSEL]:  And that=s
askingC 

 

THE
COURT:  So the basis of law for the
objection is what?

 

[DEFENSE
COUNSEL]:  TwoCtwo-fold.  The secondary objection would be that it=s
asking this witnessC 

 

THE
COURT:  Well, give me first-fold first
and second again.  I want to make sure I
understand you.

 

[DEFENSE
COUNSEL]:  It=s
asking this witness to without predicate on the use or intended use of a deadly
weaponCI
guess they=re
trying to get in the motor vehicle as the deadly weaponCwhether
or not thisCthe
proper predicate has been laid for that, that=s
number one; and, number two, whether or not this witness can testify as to the
legal conclusion of its use or intended use being a deadly weapon.  

 

THE
COURT:  Well, I don=t
believe that=s the
way the question was asked.  I=ll
overrule the objection.  

The
question was, so in the mannerCin the offer of itsCin
the manner of its use, did the defendant=s vehicle cause the death of
the victim?  You may answer.

 

[WITNESS]:  Yes, it did.

It is from this evidentiary ruling that appellant now appeals,
claiming that Trooper Smith was not qualified to testify as an expert witness
about whether appellant used or intended to use the SUV as a deadly
weapon.  The State counters that
appellant failed to preserve this issue for appeal because her Alack of predicate@ objection was too general to direct the trial court to the specific
grounds for the objection. 








To preserve a complaint for appellate review, the record must show
that the complaint was presented by timely request, objection, or motion and
was sufficiently specific to make the trial court aware of the complaint.  Tex.
R. App. P. 33.1(a).  All a party
must do to avoid the forfeiture of a complaint on appeal is let the trial judge
know what she wants, why she thinks herself entitled to it, and to do so
clearly enough for the judge to understand her at a time when the trial court
is in a proper position to do something about it.  Lankston v. State, 827 S.W.2d 907, 909
(Tex. Crim. App. 1992).  Of course, when
it seems from the context that a party failed to communicate her desire
effectively, then reviewing courts should not hesitate to hold that appellate
complaints arising from the event have been lost.  Id. 
But otherwise, appellate courts should reach the merits of parties= complaints without requiring that the parties read some special
script to make their wishes known.  Id.  However, to preserve error on a complaint
for appeal, the objection at trial must comport with the complaint on
appeal.  Tex. R. App. P. 33.1; Coffey v. State, 796 S.W.2d 175,
179 (Tex. Crim. App. 1990).








        Here, appellant objected both on the basis of improper
predicate and on the basis that the State A[asked Trooper Smith] to come to a legal conclusion@ regarding the SUV=s use as a deadly weapon. 
Although appellant did not use trigger words such as Aexpert,@ Aqualifications,@ Arelevance,@ Arule 702,@ or Acompetency@ in her
objection, her actual objection was specific enough to make the trial court
aware of the complaint.  See Tex. R. App. P. 33.1(a); Heidelberg
v. State, 144 S.W.3d 535, 538 (Tex. Crim. App. 2004) (holding that
defendant=s objection
is specific enough to give the trial court notice if it is clear from the
context).  








However, even though appellant properly made the trial court aware of
her complaint, she did not provide specific grounds regarding why Trooper Smith
was unqualified to testify as an expert witness.  An objection to the admission of evidence
must state the specific grounds for the objection, unless the specific grounds
are apparent from the context.  Tex. R. App. P. 33.1(a)(1)(A).  An objection to an improper predicate that
fails to inform the trial court exactly how the predicate is deficient will not
preserve error.  Bird v. State,
692 S.W.2d 65, 70 (Tex. Crim. App. 1985), cert. denied, 475 U.S. 1031
(1986).  Rule 702 and Daubert
cover numerous requirements and guidelines for the admission of expert
testimony. See Tex. R. Evid.
702;  Daubert v. Merrell Dow Pharms.,
Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993); Scherl v. State, 7
S.W.3d 650, 651-52 (Tex. App.CTexarkana 1999, pet. ref=d).  Objections based simply on
rule 702 and Daubert alone are, in effect, general objections to an
improper predicate and do not adequately inform the trial court of any specific
complaint upon which it is to rule. 
Here, by simply arguing that the State had not laid the proper predicate
for Trooper Smith to testify, appellant failed to preserve, for appellate
review, any specific complaint about Trooper Smith=s testimony as an expert regarding whether appellant used the SUV as a
deadly weapon. See Scherl, 7 S.W.3d at 651-52.  

Appellant=s second
objection to Trooper Smith=s testimony, that the State asked Trooper Smith to come to a legal
conclusion, does not comport with her complaint on appeal.  Therefore, appellant abandoned this argument
on appeal.  See Coffey, 796 S.W.2d
at 179. Accordingly, we overrule appellant=s third point.        

Appellant=s Deadly
Weapon Finding Argument








In her first two points, appellant argues that the trial court
violated her due process and jury trial rights by improperly making a deadly
weapon finding and that the evidence is legally insufficient to support the
deadly weapon finding.[3]  Appellant asserts that the trial court erred
in making a deadly weapon finding because this finding of fact was never made
by a jury beyond a reasonable doubt, because the indictment did not allege in
what manner appellant used the motor vehicle as a deadly weapon, and because
the indictment stated that Price=s death was caused by an Aaccident or mistake.@ 

Article 37.07 of the code of criminal procedure provides that a
defendant may choose her trier of fact at the punishment phase.  Tex.
Code Crim. Proc. Ann. art. 37.07, ' 2(b) (Vernon 2006).  A
defendant who fails to elect for the jury to assess punishment leaves all
questions to be considered in the punishment phase to the trial court.  See Tinney v. State, 578 S.W.2d 137,
139 (Tex. Crim. App. 1979).  Therefore,
the trial court as the fact-finder on punishment has the authority to make a
deadly weapon finding as long as the jury has not already decided the issue at
the guilt-innocence phase.  Fann v.
State, 702 S.W.2d 602, 604 (Tex. Crim. App. 1986) (op. on reh=g); Umoja v. State, 965 S.W.2d 3, 10 (Tex. App.CFort Worth 1997, no pet.). 
Because appellant did not elect for the jury to assess her punishment,
the trial court, after hearing evidence presented at the punishment trial
phase, appropriately made this determination. 
See Tinney, 578 S.W.2d at 139. 








We next address appellant=s argument that her due process rights were violated because the
indictment and deadly weapon notice did not allege in what manner of use
appellant=s motor
vehicle constituted a deadly weapon under section 1.07(a)(17)(B) of the penal
code.  Tex.
Penal Code Ann. '
1.07(a)(17)(B) (Vernon Supp. 2006).  A
deadly weapon is anything that Ain the manner of its use or intended use is capable of causing death
or serious bodily injury.@  Id.  Motor vehicles may fall within that category
depending on their manner of use.  Ex
parte McKithan, 838 S.W.2d 560, 561 (Tex. Crim. App. 1992); Moya v.
State, 204 S.W.3d 509, 510 (Tex. App.CAmarillo 2006, no pet.).  

The record reflects that the State provided appellant with sufficient
notice of its intent to seek an affirmative deadly weapon finding.  The indictment alleged

[that
appellant did] then and there operate a motor vehicle in a public place while
intoxicated . . . and did by reason of such intoxication cause the death of . .
. Ronald Leslie Price, by accident or mistake, to-wit: by driving said motor
vehicle into a vehicle being driven by said, Ronald Leslie Price.

 

An allegation in an indictment charging a defendant with causing the
death of an individual by the use of a motor vehicle gives sufficient notice of
the State=s intent to
seek a deadly weapon finding.  Ex
parte McKithan, 838 S.W.2d at 561. 
Here, such an allegation existed. 
Further, contrary to appellant=s assertion, the indictment explicitly stated the manner in which appellant=s use of the motor vehicle caused it to become a deadly weapon (Aby driving said motor vehicle into a vehicle being driven by [Price]@). 








Appellant also claims that because the indictment stated that Price=s death was caused by an Aaccident or mistake,@ the deadly weapon finding was improper.  However, under the penal code, appellant=s use of the motor vehicle does not have to be intentional; she must
just use it in a deadly manner.  See Tex. Penal Code Ann. ' 1.07(a)(17)(B); McCain v. State, 22 S.W.3d 497, 503 (Tex.
Crim. App. 2000); Walker v. State, 897 S.W.2d 812, 814 (Tex. Crim. App.
1995).  Accordingly, we overrule
appellant=s first
point.

We now turn to appellant=s assertion that the evidence was legally insufficient to support the
trial court=s deadly
weapon finding.  Trooper Smith testified
that appellant was the driver of the SUV that he first observed to be lying on
its roof in the public roadway. 
Appellant admitted that she was speeding and lost control of her SUV,
causing the accident.  Through his
accident reconstruction investigation, Trooper Smith was able to reconstruct
much of appellant=s
description of the accident. 
Specifically, Trooper Smith testified that the point of impact between
appellant and Price=s vehicles
took place in Price=s lane of
traffic, that appellant was at fault in causing the accident, and that
appellant was operating her vehicle in excess of the speed limit when the
collision occurred.  The State also
admitted a lab report demonstrating that appellant=s blood alcohol level was 0.20 when her blood sample was taken two to
three hours after the accident. 








Cushman testified that, while she was riding in Price=s car, appellant=s SUV came Aat great speed across our lane.@  Additionally, the impact of
appellant=s car Acrushed@ Price=s door so that Cushman could not get him out. 

Trooper Smith and Cushman both testified that the impact of appellant=s SUV on the roof of Price=s car caused his death. 
Specifically, Trooper Smith testified that the roof above the driver=s seat where Price was sitting was Acaved in below the steering wheel.@  Similarly, Cushman testified
that she felt Avery warm
blood@ on Price immediately after the wreck and believed that he died on
impact.  Trooper Smith also stated that
when he arrived at the scene of the accident immediately after the collision,
Price was already deceased.

This testimony constitutes some evidence upon which a rational trier
of fact could conclude beyond a reasonable doubt that appellant=s SUV, in its manner of use, was capable of causing death or serious
bodily injury.  See Davis v. State,
964 S.W.2d 352, 354 (Tex. App.CFort Worth 1998, no pet.) (holding that appellant=s weaving into lanes of oncoming traffic while intoxicated and causing
others to take evasive action was enough evidence to support a deadly weapon
finding); Moya, 204 S.W.3d at 510 (same).  Therefore, the evidence was legally
sufficient to support the trial court=s deadly weapon finding. 
Accordingly, we overrule appellant=s second point.

 








Conclusion

Having overruled appellant=s three points, we affirm the trial court=s judgment.

 

PER
CURIAM

 

PANEL
F:    LIVINGSTON, GARDNER, and WALKER, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
February 1, 2007       











[1]See Tex. R. App. P. 47.4.





[2]Under
rule 702 of the Texas Rules of Evidence, if scientific, technical, or other
specialized knowledge will assist the trier of fact to understand the evidence
or to determine a fact in issue, a witness qualified as an expert may  give his or her opinion testimony
thereto.  Tex. R. Evid. 702.





[3]We
note that all of appellant=s points were discussed and
argued together.  We are not obligated to
address multifarious points, but to the extent we are able to discern her
contentions on appeal, we will address them.  See Luquis v. State, 72 S.W.3d 355, 364 & n.21 (Tex. Crim. App. 2002)
(holding that appellate courts may disregard any point that is multifarious);
Foster v.
State, 101 S.W.3d
490, 499 (Tex. App.CHouston [1st Dist.] 2002, no pet.) (holding
that appellant courts may disregard multifarious points, but may also consider
them if they can determine with reasonable certainty the nature of the
complaints raised).