MEMORANDUM OPINION



No. 04-06-00676-CR



Donald Ray SPRY,


Appellant



v.



The STATE of Texas,


Appellee



From the 216th Judicial District Court, Gillespie County, Texas


Trial Court No. 4414


Honorable Stephen B. Ables, Judge Presiding



Opinion by: Catherine Stone, Justice


Sitting: Catherine Stone, Justice

 Karen Angelini, Justice

 Rebecca Simmons, Justice


Delivered and Filed: October 31, 2007


AFFIRMED

 Donald Spry drove his tractor-trailer across an interstate median and killed a motorist. He
was convicted of the state jail felony of criminally negligent homicide (habitual) with an affirmative
deadly weapon finding. The jury assessed Spry's punishment at 12 years confinement and a fine of
$10,000. In this appeal, we must determine whether there is sufficient evidence to support the jury's
affirmative finding that Spry used his motor vehicle as a deadly weapon. (1) We affirm.

Background

 Spry worked for Texas Select Trucking in Houston, Texas. On the morning of April 19,
2005, Spry was hauling nails from Dallas to a location in Kerrville, Texas. It was dark, foggy, and
raining that morning, and Spry was unfamiliar with the route he was traveling to Kerrville.

 Spry was heading west on Interstate Highway 10 ("IH-10") when he realized he had missed
the exit for Kerrville. Once he discovered what he had done, Spry got on his CB radio to ask for
directions. Spry learned from another trucker the location of a crossover, which would allow him
to cross the interstate median and take IH-10 East back to Kerrville.

 Spry subsequently located the crossover. The crossover was a gravel area appearing to
connect the westbound lanes of IH-10 to the eastbound lanes of the highway. At this location,
however, was a state highway sign warning drivers that crossing the median was prohibited by state
law. The sign provided: "Crossing Median Prohibited - State Law." Despite the presence of this
sign, Spry nonetheless decided to cross the interstate median at the crossover. 

 Spry pulled his tractor-trailer into the crossover and checked the eastbound lanes for
oncoming traffic. Although Spry saw headlights approaching his position, he determined the
oncoming vehicle would yield to his tractor-trailer when he pulled out of the crossover. Spry
proceeded to pull out of the crossover, but the oncoming vehicle did not yield to Spry as he thought
it would. The vehicle collided with the right side of Spry's tractor-trailer, and the operator of the
vehicle, John Masters, died as a result of injuries sustained from the collision. 

 Spry was indicted for the offense of involuntary manslaughter, but the jury found him guilty
of the lesser included offense of criminally negligent homicide. The jury made an affirmative
finding as to the use of a deadly weapon and assessed Spry's punishment at 12 years confinement
and a fine of $10,000. 

Discussion On appeal, Spry challenges the legal and factual sufficiency of the evidence to support the
jury's affirmative finding of use of a deadly weapon in the commission of the offense. When
considering a legal sufficiency challenge, we review all the evidence in the light most favorable to
the verdict and determine whether any rational trier of fact could have found all of the essential
elements of the offense (or finding) beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319 (1979); McCain v. State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). With respect to a factual
sufficiency challenge, we view the evidence in a neutral light and ask whether the jury was rationally
justified in its finding beyond a reasonable doubt. Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006). We determine whether the evidence supporting the jury's finding is so weak that the
finding is clearly wrong and manifestly unjust or whether the finding is against the great weight and
preponderance of the conflicting evidence. Id. at 414-415. We will not reverse a case on a factual
sufficiency challenge unless we can say, with some objective basis in the record, that the great
weight and preponderance of the evidence contradicts the jury's finding. Id. at 417. The jury is the
exclusive judge of the facts and evaluates the credibility and demeanor of witnesses and determines
the weight afforded contradicting testimony. Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim.
App. 1997). 

 Section 1.07 of the Texas Penal Code defines "deadly weapon" as meaning "anything that
in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex.
Pen. Code Ann. § 1.07(a)(17)(B) (Vernon Supp. 2007). The court of criminal appeals has
recognized that anything, including a motor vehicle, which is actually used to cause the death of a
human being is a deadly weapon. Tyra v. State, 897 S.W.2d 796, 798 (Tex. Crim. App. 1995); Ex
parte McKithan, 838 S.W.2d 560, 561 (Tex. Crim. App. 1992). "This is necessarily so because a
thing which actually causes death is by definition, 'capable of causing death.'" Tyra, 897 S.W.2d at
798. 

 The record reflects that an official traffic-control device was situated directly at the location
where Spry crossed the interstate median of IH-10. This traffic-control device, a state highway sign,
warned all drivers that crossing the median at that location is prohibited by state law. See Tex.
Transp. Code Ann. § 541.304(1) (Vernon 1999) (defining "official traffic-control device" as any
sign, signal, marking, or device that is: "(A) consistent with this subtitle; (B) placed or erected by
a public body or officer having jurisdiction; and (C) used to regulate, warn, or guide traffic."). Spry
was required to comply with this traffic-control device, and his failure to do so constituted a
violation of state law. See id. § 544.004(a) (Vernon 1999) (stating the operator of a vehicle "shall
comply with an applicable official traffic-control device placed as provided by this subtitle unless
the person is: (1) otherwise directed by a traffic or police officer; or (2) operating an authorized
emergency vehicle and is subject to exceptions under this subtitle."); see also § 545.063 (Vernon
1999) ("An operator may not drive over, across, or in a dividing space, physical barrier, or section
constructed to impede vehicular traffic except: (1) through an opening in the physical barrier or
dividing section or space; or (2) at a crossover or intersection established by a public authority.").

 It is clear that this is not a case where Spry intended to use his vehicle as a weapon. 
However, the fact that Spry may not have intended to use his vehicle as a weapon is of no import. 
See Walker v. State, 897 S.W.2d 812, 814 (Tex. Crim. App. 1995) (holding that "no intent to use the
automobile as a weapon need be shown."). Masters collided with Spry's tractor-trailer when Spry
performed an illegal driving maneuver and then made the ill-advised decision to pull out in front of
another motorist, who had the right of way. The accident was certainly caused by Spry's conduct
and the "use" of his motor vehicle. See Tyra, 897 S.W.2d at 798 (stating that "driving an automobile
constitutes the use of it and that driving it in a manner capable of causing death or serious bodily
injury constitutes it a deadly weapon."). Based on the evidence presented at trial, we hold the
evidence is both legally and factually sufficient to support the jury's affirmative deadly weapon
finding. (2)

 We recognize that Spry disputes whether he saw Masters's headlights before he pulled out
of the interstate median. Although Spry testified during trial that he did not see Masters's headlights
before he pulled into the eastbound lanes of IH-10, his testimony was contradicted by the testimony
of Texas Department of Public Safety Officer James Salas. Officer Salas testified Spry told him after
the collision that he saw headlights coming out of the fog and drizzle when he decided to enter the
eastbound lanes of IH-10 and believed the oncoming motorist would yield to him. The jury, as fact
finder, was entitled to resolve this conflict in the testimonial evidence against Spry, which it clearly
did. See Stogiera v. State, 191 S.W.3d 194, 196 (Tex. App.--San Antonio 2005, no pet.)
(recognizing the jury evaluates the credibility and demeanor of witnesses and determines the weight
afforded contradicting testimony).

 Conclusion


 Based on the foregoing, the judgment of the trial court is affirmed.


 Catherine Stone, Justice

Do Not Publish


1. Spry does not challenge the legal or factual sufficiency of the evidence to sustain his conviction.
2. Although we deem the evidence sufficient to support the deadly weapon finding under the facts of this case,
we express our concerns about the ever-expanding application of the deadly weapon statute in the State of Texas. See
generally Coleman v. State, 145 S.W.3d 649, 656 (Tex. Crim. App. 2004) (Cochran, J., concurring) (noting that the
universe of deadly weapon findings has expanded exponentially and suggesting "[i]t has fallen prey to 'mission creep'
into areas unforeseen and probably unintended by the Legislature.").